UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| D.O.B. by his mother<br>BRITTANY M. DUDLEY,<br>　　　　Plaintiff,<br><br>　　vs.<br><br>MICHAEL J. ASTRUE<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br>　　　　Defendant. | 1:10-cv-01142-WTL-TAB |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT
SEEKING JUDICIAL REVIEW**

**I.　　Introduction**

Brittany M. Dudley seeks judicial review of an Administrative Law Judge's decision denying her son ("D.O.B.") Supplemental Security Income under the Social Security Act. [Docket No. 14.] Dudley claims that the ALJ erroneously denied benefits to D.O.B. after concluding D.O.B. did not meet or equal the listing requirements for asthma or attention deficit hyperactivity disorder. [*Id.*] For the reasons set forth below, the Magistrate Judge recommends that the ALJ's decision be affirmed.

**II.　　Background**

D.O.B. was born on March 26, 2004, and his mother filed an SSI application on his behalf on February 9, 2007. [Tr. at 39.] The application alleges that D.O.B. became disabled on July 1, 2004, due to chronic asthma. [Docket No. 21.] After filing the application, Dudley further alleged that D.O.B. suffers from ADHD. [*Id.*] The application was denied initially and

1

upon reconsideration. [*Id.*] Dudley then requested a hearing before an ALJ. [*Id.*]

On December 1, 2009, an ALJ held a hearing. [Tr. at 13–30.] Dudley and D.O.B.'s attorney appeared and were given an opportunity to be heard. [*Id.*] Following the hearing, the ALJ issued a decision denying D.O.B. SSI benefits. [Tr. at 36–47.] The ALJ's decision employed a three-step sequential analysis, and step three concluded that D.O.B.'s conditions did not meet or medically equal the criteria in listings 103.03 (asthma) and 112.11 (ADHD).[1] [*Id.*]

Step three of the ALJ's analysis consists of three findings. First, the ALJ found that D.O.B. did not satisfy listing 103.03 because D.O.B.'s asthma does not require frequent treatment and there are no persistent symptoms between flare-ups. [Tr. at 39.] Second, the ALJ found that despite D.O.B.'s speech impediment, he can effectively communicate his needs and wants.[2] [Tr. at 41.] Third, the ALJ found that D.O.B. was never diagnosed with ADHD, and contrary to a diagnosis of ADHD, medical records attribute behavioral problems to a lack of parental control, inconsistency in discipline, and the arrest of D.O.B.'s father. [*Id.*]

---

[1]Listing 103.03 requires "[p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following: Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or [s]hort courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period . . . ." 20 C.F.R. Part 404, Subpart P, App'x 1, § 103.03(C).

Listing 112.11 requires medical documentation of hyperactivity "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." 20 C.F.R. Part 404, Subpart P, App'x 1, § 112.11.

[2]The relevancy of D.O.B.'s speech impediment is unclear from the record, especially since D.O.B. did not raise the issue in his SSI application and it is not discussed in conjunction with any listing in the ALJ's decision. Nonetheless, D.O.B.'s brief does not raise any issues for review with respect to the speech impediment. [*See* Docket No. 14.]

On July 14, 2010, the Appeals Council denied D.O.B.'s request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. [Tr. at 1–7.] D.O.B. now seeks judicial review, arguing that step three of the ALJ's analysis for listings 103.03 and 112.11 is not based on substantial evidence. [Docket No. 14.] D.O.B. asserts four arguments in support of his position: (1) the ALJ ignored relevant evidence, (2) the ALJ failed to summon a medical examiner, (3) the ALJ failed to sufficiently articulate his credibility determinations, and (4) the ALJ failed to discuss relevant listings.[3] [*Id.*]

### III. Discussion

This Court must uphold an ALJ's decision if substantial evidence supports her findings. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If there is evidence contrary to the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Once the ALJ has properly considered the evidence, she must "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

*A.    Ignored evidence*

D.O.B. argues that substantial evidence fails to support the ALJ's decision because the ALJ ignored and mischaracterized evidence. [Docket No. 14 at 19.] D.O.B.'s brief provides

---

[3]D.O.B. also makes two additional arguments about fairness. [*See* Docket No. 14 at 12–14.] This Court will not address these arguments since they are undeveloped conclusory assertions rather than actual analysis. *See Elliott v. Astrue*, No. 1:09-cv-653-SEB-DML, 2010 WL 3893801, at *6 (S.D. Ind. Sept. 29, 2010) (failing to discuss facts and providing a perfunctory or undeveloped argument is grounds for waiver).

little, if any, guidance in pointing to evidence that the ALJ ignored or mischaracterized. [*Id.*] The argument section of D.O.B.'s brief simply dumps five pages of bare medical record listings on this Court unaccompanied by any analysis of those records.[4] [*Id.* at 19–24.] This Court has previously found this style of argument by D.O.B.'s counsel to be waived due to lack of development. *See Firkins v. Astrue*, No. 1:09-cv-00923-JMS-TAB, 2010 WL 3037257 (S.D. Ind. Aug. 3, 2010); *Williams v. Astrue*, No. 1:08-cv-1353-JMS-TAB, 2010 WL 2673867 (S.D. Ind. June 29, 2010); *Idiaghe v. Astrue*, No. 1:08-cv-1354-WTL-DML, 2010 WL 1190326 (S.D. Ind. Mar. 23, 2010); *Poston v. Astrue*, No. 1:08-cv-1543-JMS-LJM, 2010 WL 987734 (S.D. Ind. Mar. 15, 2010); *Whitlow v. Astrue*, No. 1:07-cv-1173-WTL-TAB, 2009 WL 648602 (S.D. Ind. Mar. 10, 2009).

In *Firkins*, the court "strongly encourage[d] counsel to pay close attention to the application of the law to the facts in subsequent briefs." *Firkins*, 2010 WL 3037257, at *4 n.7. Counsel was told that if he "continues to file briefs with such sparse argumentation, he runs the risk that the Court will find his arguments waived for review." *Id.* Despite these warnings, D.O.B.'s brief consists of five pages of bare medical record listings unsupported by analysis. [Docket No. 14 at 19–24.] Continuing to compel "the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources." *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n.5 (7th Cir. 1992). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Waiver is therefore appropriate.

---

[4]D.O.B.'s reply brief employs the same strategy, but with vague and undeveloped notations to the side of some record listings. [Docket No. 23 at 5–9.]

Even assuming D.O.B.'s argument is not waived, the ALJ's consideration of the evidence reasonably and adequately supports the conclusions drawn. A review of the record reveals nine sources of evidence:

- Source One. Medical Records from Dr. Jones who is D.O.B.'s primary care pediatrician. Records reveal that D.O.B. has asthma and takes medication. Records also show that the asthma is well controlled and at times D.O.B. is symptom free. [Tr. at 40.]

- Source Two. Dr. Gupta concludes that D.O.B. has asthma and takes medication on a regular basis, but there are no signs of active disease or respiratory distress. Articulation skills are below average but he "should be able to communicate with his peers and be able to communicate his wants and needs with adults at this time." [Tr. at 226–29.]

- Source Three. Dr. Blake evaluates D.O.B. and concludes that there are indicators of ADHD, but there is "not enough evidence to conclusively draw a diagnostic conclusion . . . ." [Tr. at 178–79.]

- Source Four. Psychologist Michael O'Brien concludes that D.O.B. has "possible ADHD," but does not diagnosis D.O.B. with ADHD. O'Brien also finds D.O.B. to possess average language and cognitive skills. [Tr. at 242–44.]

- Source Five. Records from Midtown Community Mental Health Center discuss behavioral concerns. These records attribute behavioral problems to a lack of parental control, inconsistency in discipline, and the arrest of D.O.B.'s father. [Tr. at 236–41.]

- Source Six. Childhood Disability Evaluation Form SSA-538-F6 provides a synopsis of medical evaluations by multiple agency physicians and is signed by those physicians. Those physicians find D.O.B. has asthma treated with Pulmicort and Albuterol, but has had no severe asthma attacks in the last 12 months. There are no chronic debilitating symptoms and no significant flares or hospitalizations in the past year. Lungs have good air exchange and there was no retracting or flaring. Asthma conditions exist but do not meet the listing standard. [Tr. at 246–70.]

- Source Seven. Teacher Questionnaire describing D.O.B.'s school behavior as a slight problem. Teacher is unaware of any medical conditions. [Tr. at 41.]

- Source Eight. Records from Clarion Health Care Center. February 2007, D.O.B. is diagnosed with mild asthma exacerbation and upper respiratory infection.

> D.O.B.'s dosage of Albuterol is increased. [Tr. at 189.] September 2007, D.O.B. claimed medication is not working and is ordered to take Orapred, an oral steroid, for five days. [Tr. at 274.] September 2008, D.O.B. is switched from a Pulmicort inhaler to a Floveant inhaler. [Tr. at 278.] October 2008, D.O.B. "had been doing well" and did not need to take Albuterol since September 2008. April 2009, D.O.B. reported a flare-up two weeks prior, but no longer experienced problems after a five-day cycle of Orapred. [Tr. at 283.]
> 
> • Source Nine. D.O.B. made numerous visits to Clarion Health Care Center between April 2007 and February 2009. These visits were unrelated to asthma and were for eye irritations, ear infections, diarrhea, genital complications, burns, and a running nose. [Docket No. 21 at 3–10.]

The ALJ discusses seven of the nine sources of evidence in detail and draws a conclusion consistent with all nine sources. [Tr. at 39–41.] The only evidence that the ALJ did not consider are sources eight and nine.[5] Evidence in source nine can be dismissed as irrelevant since that evidence deals with symptoms unrelated to the listings at issue.

Source eight, although relevant, does not warrant remand because it does not introduce evidence of frequent treatment or persistent flare-ups. Specifically, D.O.B.'s use of oral steroids for only a five-day period in 2007 and 2009 does not rise to the level of frequency or persistence that listing 103.03 requires. In *Collier ex rel. K.L.C. v. Astrue*, No. 1:09-cv-0066-LJM-TAB, 2010 WL 481038, at *5 (S.D. Ind. Feb. 1, 2010), the court explained that listing 103.03 requires a claimant "to demonstrate use of long-term control medications, namely oral and intravenous corticosteroids, such as prednisone and methylprednisolone, which are used to treat acute asthma attacks or severe persistent asthma." Although the oral steroid Orapred may be the type of

---

[5]It is unclear whether the ALJ considered source two. Dr. Gupta, a physician with the Family and Social Services Administration Disability Determination Bureau, may have been considered an agency physician by the ALJ. Even if the ALJ did not consider Dr. Gupta's records, he makes the same findings and conclusions as agency physicians. [*See* Tr. 226–29, 246–70.]

medication contemplated by the listing, D.O.B. did not use "oral steroids for three months during a twelve-month period, which is necessary to satisfy that Listing." *Id.* Moreover, using Albuterol and Floveant on a daily basis does not satisfy the listing either. *Id.* at *3–5 (holding that claimant did not satisfy listing 103.03 even though he used Albuterol and Floveant on a daily basis). Although the ALJ failed to discuss this evidence, considering this evidence on remand would not alter the ALJ's decision. "[I]n administrative as in judicial proceedings, errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision." *Sanchez v. Barnhart*, 467 F.3d 1081, 1082–83 (7th Cir. 2006).

      *B.     Summoning a medical expert*

D.O.B. also argues that the ALJ erred when she failed to summon a medical expert. [Docket No. 14 at 17.] An ALJ must consider an expert's opinion when determining if an impairment meets or equals a medical listing. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). But an ALJ is not required to call a medical expert when "the evidence was adequate for the ALJ to find [the claimant] not disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Moreover, an "ALJ need not summon a medical expert to testify at a hearing if a medical expert has signed a disability determination form that addresses whether the alleged impairment equals a listing . . . ." *Wadsworth v. Astrue*, No. 1:07-cv-0832-DFH-TAB, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008) (Hamilton, J.) (citing *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989)). In this case, the ample evidence consists of evaluations from Dr. Jones, agency physicians, psychologists, records from Midtown Community Mental Health Center, and a teacher questionnaire. [Tr. at 40–42.] The ALJ also considered a SSA-538-F6 Childhood Disability Evaluation form signed by numerous agency physicians. [Tr. at 40–41, 246–70.]

7

Accordingly, the ALJ was not required to summon a medical examiner.

   *C.   Credibility*

   D.O.B. further claims that the ALJ failed to follow the standards that the SSA has developed for credibility determinations as published in SSR 96-7. [Docket No. 14 at 27.] However, D.O.B. does not discuss any of the factors set forth in SSR 96-7 and completely fails to discuss any facts. [*Id.*] On at least two occasions, D.O.B.'s counsel has made the same undeveloped argument, with the same conclusory statements, as he again attempts to do in this case. *See Elliott v. Astrue*, No. 1:09-cv-653-SEB-DML, 2010 WL 3893801, at *6 (S.D. Ind. Sept. 29, 2010); *Johnson v. Astrue*, No. 1:08-cv-01600-JMS-LJM, 2010 WL 1190123, at *4 (S.D. Ind. Mar. 22, 2010). This Court finds—at least for the third time—that the same credibility argument is waived.

   Even if D.O.B.'s argument is not waived, it also fails on the merits. Because an ALJ is in the best position to determine credibility of witnesses, her credibility determination is reviewed deferentially. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). A court should "not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *J.H.R. ex rel. Radford v. Astrue*, No. 1:07-cv-1584-DFH-DML, 2009 WL 692211, at *5 (S.D. Ind. Mar. 13, 2009) (Hamilton, J.). But if there is evidence contrary to the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) ("Social Security Ruling 96-7 provides that ALJs must supply specific reasons for a credibility finding; the ALJ cannot state simply that the individual's allegations have been considered or that the allegations are (or are

not) credible.").

The conflicting evidence in this case consists of the mother's testimony and the medical records.[6] [*Id.*] The ALJ confronts the mother's testimony and explains that "the claimant's symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below." [Tr. at 40.] The ALJ then explains that the mother's testimony is not credible in light of the medical evidence from D.O.B.'s primary care physician, Dr. Jones. [Tr. at 40.] The ALJ also considers evidence from agency physicians, psychologists, Midtown Community Mental Health Center, and D.O.B.'s teacher. [*Id.*] As discussed above, this additional medical evidence supports or is at least consistent with Dr. Jones's conclusions. *See Skarbek*, 390 F.3d at 503 ("A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by medical findings and consistent with substantial evidence in the record."). Because credibility determinations are reviewed deferentially and a treating physician's opinion is typically entitled to controlling weight, this Court will not disturb the ALJ's credibility determination since it is properly articulated and not patently wrong. *Wolfe v. Shalala*, 997 F.2d 321, 326 (7th Cir. 1993).

D.  *Discussing listings*

D.O.B. further argues that the ALJ erred by failing to cite and discuss listings 103.03 and 112.11. [Docket No. 14 at 15.] An ALJ should discuss listings when considering them, and failure to do so, combined with a perfunctory analysis, may require remand. *Ribaudo v.*

---

[6]The ALJ also notes some inconsistencies between speech evaluations, but D.O.B. has not raised any issues related to speech on appeal. [*See* Docket No. 14.]

*Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006). Nonetheless, the "Seventh Circuit has refused to find that the ALJ must expressly refer to every potentially relevant listing." *Radford*, 2009 WL 692211, at *5 (citing *Rice v. Barnhart*, 384 F.3d 363, 369–70 (7th Cir. 2004)).

In this case, the ALJ adequately addresses listings 103.03 and 112.11. The ALJ explains that D.O.B.'s "asthma has not required treatment at the frequency necessary to meet the listing nor does he have persistent symptoms between flare-ups as required by Listing 103.03." [Tr. at 39.] The ALJ then examines the medical evidence in detail and is unable to identify any evidence that satisfies the frequency or persistence requirements of listing 103.03. [*Id.* at 39–41.] Accordingly, it is difficult to grasp how D.O.B. believes that the ALJ did not cite or discuss listing 103.03, perhaps because D.O.B. is making another undeveloped and generic argument.

D.O.B.'s blanket argument, however, does manage to catch the ALJ's failure to explicitly cite listing 112.11. Nevertheless, the ALJ adequately discusses listing 112.11 to the extent that it is relevant. [Tr. at 41.] The ALJ explains that medical records indicate possible ADHD, but do not diagnose D.O.B. with ADHD.[7] [Tr. at 41, 242–44.] Other records indicate a lack of parental control, inconsistent discipline, and the arrest of D.O.B's father as the source of behavioral problems. [Tr. at 41.] Consequently, D.O.B. falls short of satisfying listing 112.11, and therefore the ALJ was not required to cite or further consider listing 112.11. *Briner v. Astrue*, No. 1:09-cv-429-WTL-TAB, 2010 WL 3781718, at *4 (S.D. Ind. Aug. 18, 2010) (explaining that an ALJ does not have to discuss listings when the evidence falls short of establishing those

---

[7]Listing 112.11 requires medical documentation of hyperactivity "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." 20 C.F.R. Part 404, Subpart P, App'x 1, § 112.11.

listings); *Collier*, 2010 WL 481038, at *5 ("Although the ALJ did not mention Listing 103.03C2 in his written decision, it is clear from his decision that he contemplated that listing."); *Radford*, 2009 WL 692211, at *6 (explaining that the ALJ did not commit an error by failing to explicitly cite a listing because it was obvious that the ALJ considered that listing).

## IV. Conclusion

For the above reasons, the Magistrate Judge recommends that the ALJ's decision be affirmed. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute a wavier of subsequent review absent a showing of good cause for such failure.

Dated: 08/03/2011

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Patrick H. Mulvany
patrick@mulvanylaw.com

Tom E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov